IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID P. HANEY,                          )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )          Case No. 07-4015-KGS
                                         )
UNIVERSITY OF KANSAS, and                )
RALPH OLIVER, in his Individual          )
and Official Capacity,                   )
                                         )
                    Defendants.          )

## MEMORANDUM AND ORDER

This matter comes before the court upon defendants' Motion for Summary Judgment (Doc. 46) and Motion to Dismiss for Lack of Jurisdiction (Doc. 47). Plaintiff filed a response in opposition to both motions (Doc. 55) to which defendants have replied (Doc. 65). As a result, these motions are ripe for disposition.

In defendants' Summary Judgment Motion, defendants the University of Kansas ("KU" or "the University") and Ralph Oliver ("defendant Oliver"), in his individual and official capacity, seek summary judgment as to plaintiff's claims of race discrimination and retaliation under Title VII[1], deprivation of a liberty interest pursuant to 42 U.S.C. § 1983, and pendant state-law claims for tortious interference and defamation.

As detailed more fully below, the court grants defendants' motion on the federal claims and declines to exercise supplemental jurisdiction over the remaining state-law claims.

---

[1]42 U.S.C. § 2000e et seq.

## I.     Legal Standards

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] For purposes of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[3]  A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[5]  Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[6]  The non-moving party may not rest on mere allegations or denials in its response in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[7]

The court determines "whether the evidence presents a sufficient disagreement to require

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248)*.*

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F.Supp.2d 1191, 1195 (D. Kan. 2001); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).

[6] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[7] *Liberty Lobby*, 477 U.S. at 256.

submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."[8] To that end, the court "should not weigh the evidence or credibility of witnesses."[9] On a motion for summary judgment, the "judge's function is not. . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[10] The court must consider the record in the light most favorable to the non-moving party.[11] "If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate."[12]

"To survive summary judgment, 'nonmovant's affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"[13] "To be sure, the nonmoving party need not produce evidence 'in a form that would be admissible at trial,' but the content or substance of the evidence must be admissible."[14] In particular, "hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'"[15] "Hearsay is

---

[8]*Id*. at 251-52.

[9]*Wells v. Wal-Mart Stores, Inc.*, 219 F. Supp. 2d 1197, 1200 (D. Kan. 2002).

[10] *Liberty Lobby*, 477 U.S. at 249.

[11] *See Doebele*, 157 F. Supp.2d at 1195. *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991).

[12]*Wells*, 219 F. Supp. 2d at 1200 (citing *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986)).

[13]*Told v. Tig Premier Ins. Co.*, 149 Fed. Appx. 722, 725 (10th Cir. 2005) (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)).

[14]*Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[15]*Id.* (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (alterations in original).

a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"[16] and is generally inadmissible.[17]

## II.   Facts

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to plaintiff, the non-moving party.  Immaterial facts and factual averments not properly supported by the record are omitted.[18]

Plaintiff David Haney ("Mr. Haney"), a white male, was hired by the University of Kansas Office of Public Safety ("KUOPS") as a storekeeper in September 1988.  In December of 1989, Mr. Haney became a police officer for KUOPS, and while so employed, received satisfactory to above satisfactory evaluations, including a rating of "excellent" on his last evaluation.  During the majority of his eighteen year tenure at KUOPS Mr. Haney was well-liked by his supervisors and colleagues, served as a mentor to new recruits, and became a certified Field Training Officer.  Prior to his termination of employment with the KUOPS, the only form of disciplinary action Mr. Haney

---

[16]Fed. R. Evid. 801©.

[17]Fed. R. Evid. 802.

[18]Plaintiff's Memorandum in Opposition (Doc. 57) cites to several non-notarized affidavits.  However, Fed. Rule Civ. P. 56(e) provides specific requirements for affidavits at the summary judgment stage, including that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."  As a result, the court cannot consider these affidavits as they have not been "sworn."  *See Heartland Surgical Specialty Hospital v. Midwest Division*, 527 F. Supp. 2d 1257, 1291 (D. Kan. 2007)(citing *Flemming v. Corrections Corp. of Am.*, 143 Fed. Appx. 921, 925 n.1 (10th Cir, 2005)(stating that "[a]n unsigned affidavit . . . does not constitute evidence under Fed. Rule Civ. P. 56(e)"); *Hamilton v. Century Concrete, Inc.*, No. 06-2263-JWL, 2007 U.S. Dist. LEXIS 49753 (D. Kan. July 9, 2007)(citing *Flemming* in support of its ruling that "[i]n the absence of signatures by either the affiants *or the notary*, the affiants' statements in this case cannot be considered to have been sworn to or made under penalty of perjury, and the statements cannot be considered in opposition to summary judgment on plaintiff's claims."))(emphasis added).

Similarly, much of the record cited by plaintiff in opposition to the instant motions amounts to hearsay, an issue the court will address in detail subsequently.

received was a Report of Employee Counseling (ER20-A) regarding a vehicle accident.

Ralph Oliver, a black male, was Associate Director of the KUOPS from 1993 until December 1997, when he was named Director.   Chris Keary, a white male, has been the Associate Director, for the KUOPS since 1998.  Captain Mark Witt, a white male, is the Captain responsible for the KUOPS's Patrol Unit which is comprised of the university police officers.  Captain Schuyler Bailey, a black male, is the Captain responsible for the KUOPS's Police Support Unit.  Rick Johnson, a white male, and friend to Mr. Haney, works as a officer for KUOPS.

### A.     Defendant Oliver's alleged acts of discrimination.

 At the beginning of his tenure as Director, defendant Oliver told Carol Supanic, a white female dispatcher, that he was "a black man in a suit in a white man's world."[19]  After becoming Director, defendant Oliver promoted Tony Augusto and James Anguiano–Hispanic officers–to sergeants.  Plaintiff recalls that before defendant Oliver became Director, KUOPS "didn't have any black officers" but within his first eighteen months as Director, Oliver "hired a black secretary . . . Sabrina Evans . . . two black officers, Lamont Jackson, Sylvester Birdson, . . . a Hispanic officer named Jose Jamarillo . . . [and] a couple of white officers too." [20]

Sometime in the fall of 2005, plaintiff states the following incident occurred:

[Defendant Oliver] walked in.  I [Mr. Haney] was reading–or I was getting ready to go home, and I was reading the–something on the internet about the war in Iraq, and made a comment about it.  And he said something to the effect like, "Oh, that's all America ever cares about is oil and white people.  They never fought–they never–you know, they never fought and helped people in Africa when they needed help down there.  All they care about is Iraqi oil and Europe and World War II, and they don't care about black people."[21]

---

[19]Memorandum in Opposition (Doc. 57) (Doc. Exhibit I)(depo of Supanic) p. 16.

[20]Memorandum in Opposition (Doc. 57)(Exhibit B)(Mr. Haney's deposition) at p. 105.

[21]*Id.* at 103.

At the time of plaintiff's termination, defendant Oliver and Captain Bailey were the only black male employees of the KUOPS and officers Augusto and Anguiano were the only other minority officers. Between 2000 and 2005 there have been three (3) EEOC complaints brought against defendant Oliver and KUOPS.

### B.      KUOPS's internal investigation of Plaintiff.

Mr. Haney had a personal, romantic relationship with Rhonda McCracken beginning in 2002.[22] In August 2005 Ms. McCracken became employed with the University of Kansas Freshman Sophomore Advising Center. Plaintiff states that in October of 2005 Mr. Haney asked for,[23] and Ms. McCracken "shared" her KU Outlook password for Mr. Haney because of "trust issues" stemming from her previous infidelity.[24] Sometime in November of 2005 Mr. Haney and Ms. McCracken's relationship "began to wane", though they still saw each other romantically.[25]

On December 20, 2005, Associate Director Keary was dispatched to meet with Rhonda McCracken and her supervisors Tamara Durham and Sabrina Marino to discuss a situation involving Mr. Haney. On December 20, 2005, Mr. Haney was informed in writing that the Public Safety Office was conducting an internal investigation regarding the report of a computer-related crime involving an allegation that he had improperly used computer system passwords to access another

---

[22]Mr. Haney frequently references alleged bad acts on the part of Ms. McCracken in his recitation of material facts–namely that during their off-again, on-again relationship Ms. McCracken contacted other men "for dates" via email, had a female friend pose as an online "stalker" in an attempt to garner more attention from Mr. Haney, and had a unhealthy relationship with her ex-husband, with whom she lived during a large portion of her relationship with Mr. Haney. These facts, however personally unfortunate for Mr. Haney, are not material to the legal issues at hand.

[23]Memorandum in Opposition (Doc. 57) Plaintiff's Supplemental Fact Nos. 164.

[24]*Id.* at Plaintiff's Supplemental Fact Nos. 136-37.

[25]*Id.* at Plaintiff's Supplemental Fact No. 144.

KU staff member's email.  This letter also informed Mr. Haney that he was being placed on administrative leave with pay pending completion of the investigation and a determination of whether disciplinary action was warranted.  Mr. Haney was informed that he was to have no contact with Ms. McCracken at any time during this investigation.[26]  KUOPS conducted two investigations regarding these allegations: (1) an internal personnel investigation conducted by Captain Mark Witt, and (2) a criminal investigation conducted by Detective Mike Riner.

On December 21, 2005, Captain Witt visited Ms. McCracken and recorded a number of voicemail messages from her phone left by Mr. Haney on December 19 and 20, 2005.  The voicemail messages included Mr. Haney saying the following:

> ". . . I don't want you to get in trouble for lying or anything.  Okay.  So bear with me here and I'm going to give you a story to tell that's going to work, alright."

> "So, I just wanted to tell you Rhonda that we need to get our stories straight just in case they bring you in the office again because it looks to me like she's checking the history on that account. . . . I want to get this story straight so I know what to say if I'm asked anything and you know what to say if you're asked anything . . . ."

> "And that'll cover you Rhonda, that'll cover you perfectly . . . that's all you gotta do Rhonda, and you're covered.  That way they can't prove that you're lying to them and you don't have nothing to worry about."

Plaintiff does not dispute that he left these voicemail messages.  However, plaintiff states he told Detective Riner, during his criminal investigation, that he had left the voicemails to "clarify[] the amount of time [he had possessed Ms. McCracken's password] since McCracken had made it appear to her supervisor that Mr. Haney only had the password for a couple of days."  Mr. Haney advised Detective Riner that "he didn't want Ms. McCracken in any trouble since this was her first job in

---

[26]*Id.* at Plaintiff's Supplemental Fact No. 155.

7 years and she had a small child."[27]

At the conclusion of his investigation, Captain Witt recommended terminating Mr. Haney's employment, specifically stating:

> Officer Haney has been found to have coached an individual to lie to their employer, attempting to conspire with this same individual so that he could in turn lie to his employer and to maintain a common accounting of the lie. He then lied to his employer during this investigation. The courts rely on the integrity of the police to determine the guilt or innocence of the accused. By his documented actions Officer Haney has allowed his truthfulness and integrity to be questioned by the court and his testimony determined unreliable at best. Individuals that can not provide credible testimony in court can not be police officers. Officer Haney's employment with the Kansas University Public Safety Office should therefore be terminated.

On December 23, 2005, Associate Director Keary agreed with Captain Witt's recommendation and submitted it to the University Department of Human Resources and Equal Opportunity for action. Defendant Oliver also reviewed the internal affairs investigation regarding Mr. Haney and concluded that dismissal from employment constituted an appropriate recommendation for Mr. Haney's misconduct.

On December 28, 2005, Madi Vannaman, Assistant Director of Human Resources and Equal Opportunity for University, wrote Mr. Haney advising him that she had received a recommendation for his termination from employment based on his having coached an individual to lie to that individual's employer and conspiring to lie so that a common account of the lie could be maintained. Ms. Vannaman also advised Mr. Haney that she believed dismissal from employment was warranted under the circumstances but was providing him with an opportunity to meet with her before she made the final decision as to his disciplinary action.

On January 9, 2006, Mr. Haney and his Kansas Association of Public Employees (KAPE)

---

[27]*Id.* at Plaintiff's Supplemental Fact No. 168.

attorney Claude Lee met with Ms. Madi Vannaman.  Mr. Haney provided Ms. Vannaman with an explanation of his view of the facts and circumstances which gave rise to the recommendation for his termination from employment.  Plaintiff told Mr. Vannaman that he and Captain Witt "did not get along" and that he did in fact have Ms. McCracken's computer password, but he did not lie to either Captain Witt or Detective Riner, and that the voicemails "were left prior to any investigation by" the department.[28]

After their meeting, Ms. Vannaman wrote Mr. Haney informing him that he was dismissed from employment effective January 10, 2006 for coaching and conspiring with a fellow employee to lie during the course of an internal affairs investigation.  The letter stated in part:

> You left numerous messages and made statements like: "I will give you a story that will work." "That will cover you Rhonda; that will cover you perfectly." "That way they can't prove that you're lying to them, and you'll have nothing to worry about." "I would like to know what to do today; that if I get called in, I would like to know what to say." "If I got into work today I'd like to know what I'm supposed to say."
>
> After listening to your messages, I believe you were trying to coach and/or convince Ms. McCracken that the two of you should communicate the same story to your employers. I did not hear you tell Ms. McCracken to tell the truth, but instead you stated "That way they can't prove that you're lying to them." You told Ms. McCracken "I will give you a story that will work."

Ms. Vannaman did not consider David Haney's race in determining that his misconduct warranted dismissal from employment.[29]  Mr. Haney appealed his dismissal to the University's Disciplinary Action Hearing Board, but dismissed his appeal before it could be heard.

On January 18, 2006, Director Ralph Oliver filed a "Notice of Termination or Status

---

[28]*Id.* at Plaintiff's Supplemental Fact No. 178.

[29]Plaintiff states this fact is "[u]ncontraverted but must be supplemented" with plaintiff's fact nos. 178-180. Memorandum in Opposition (Doc. 57) at p. 3 and 36-38.  The court has construed the material portions of plaintiff's fact nos. 178-180 in the light most favorable to plaintiff.

Change" with the Kansas Law Enforcement Training Center updating Mr. Haney's information to indicate that his employment with the University of Kansas Office of Public Safety had been terminated involuntarily on January 10, 2006.

### C.   Plaintiff's alleged shooting threat.

KU Public Safety Officer Rick Johnson testified that during a February 7, 2006 phone conversation with Mr. Haney he understood Mr. Haney to say that he wanted to shoot KU employees Rhonda McCracken, Sabrina Marino, and Captain Mark Witt. Plaintiff denies that he stated he was going to shoot anyone and characterizes his conversation with Mr. Johnson as follows:

> Mr. Haney had told Mr. Johnson that he couldn't understand why Captain Mark Witt would put down false information in the Internal Affairs (IA) report about Mr. Haney. Mr. Haney expressed his frustration to Mr. Johnson by stating that at times he just wanted to knock Rhonda McCracken, Sabrina Marino and Captain Witt upside the head for all the lies and half truths they had said about him. In the course of saying this Mr. Haney made a "pshh-pshh-pssh" sound.[30]

On February 7, 2006 Mr. Johnson advised the Lawrence Police Department and defendant Oliver of the perceived threat, and defendant Oliver then notified the Provost's Office.

Mr. Haney was contacted by Lawrence Police Officer Shannon Riggs who filed an information report of her conversation with Mr. Haney regarding the threat. No criminal charges were filed by the Douglas County District Attorney against Mr. Haney regarding the threat.

On February 8, 2006, Provost David Shulenburger sent Mr. Haney a letter advising him that because of the threat he had made against University employees he was prohibited from entering the premises of the University of Kansas. Mr. Haney's picture was provided to the Freshman Sophomore Advising Center in Strong Hall and other reception points in Strong Hall.

---

[30]Memorandum in Opposition (Doc. 57) Plaintiff's Supplemental Fact Nos. 185 and 186.

**D.     Plaintiff's tenure at Washburn University**.

In February 2006, Mr. Haney applied for employment as a police officer with Washburn University ("Washburn") in Topeka, Kansas, and signed an "Authorization for Records Release," which authorized anyone to whom the Release was presented to furnish Washburn with any relevant employment records or information.

Mr. Haney began employment with Washburn University on or about March 3, 2006. Sometime after Mr. Haney applied for employment with the Washburn University Police Department ("WUPD"), a WUPD employee contacted defendant Oliver, and asked for employment information concerning Mr. Haney.  Defendant Oliver advised the representative of WUPD that it was KUOPS policy not to provide employment information over the phone and that the representative who had a release could review David Haney's personnel file by coming to the University of Kansas' Office of Public Safety.  However, no representative from the WUPD ever came to the KUOPS to review Mr. Haney's personnel file.

Sometime in late March or early April 2006, while on official business, Detective Mike Riner visited Washburn University and saw Mr. Haney working an accident in an adjacent parking lot as a Washburn police officer.  Detective Riner subsequently called Sergeant James Anguiano at the KUOPS and told him that he had seen Mr. Haney.  After hearing that Mr. Haney was working as a police officer at Washburn University, Captain Witt called the Washburn Police Department and confirmed that Mr. Haney was employed there as a police officer.

On May 26, 2006, defendant Oliver attended a meeting of the Regents Universities Police Chiefs.  Dean Forester, Chief of the WUPD, was in attendance.   Defendant Oliver asked Mr. Forester if WUPD employed Mr. Haney, and Mr. Forester responded affirmatively.  Defendant

11

Oliver informed Mr. Forester that Washburn's investigator had never followed up on his background-check inquiry with the University of Kansas.  Mr. Forester told defendant Oliver that Mr. Haney had told him he had been dismissed from employment for obtaining his girlfriend's password, and asked defendant Oliver about the contents of Mr. Haney's personnel file.  Defendant Oliver responded that plaintiff had been terminated for conspiring with a witness to lie and for lying to the investigator in the course of an investigation. Ralph Oliver also told Mr. Forester that Mr. Haney had threatened to shoot the investigator, his girlfriend and her supervisor.

### E.    The June 5, 2006 incident and subsequent fallout.

On June 5, 2006, Mr. Haney states he found an email between Ms. McCracken and Captain Bailey that "affirmatively proved" she and "Captain . . . Bailey had been involved in an 'Adulterous' sexual affair[.]"[31] Mr. Haney and Ms. McCracken argued physically when Mr. Haney "attempted to get a copy of the email as evidence against Captain Bailey so that Mr. Haney could file a complaint against him."[32]  Mr. Haney reported this dispute to Officer Johnson, who in turn reported the dispute to the Lawrence Police Department.

Mr. Haney was charged in the District Court of Douglas County, Kansas with a level 7 felony of Aggravated Battery arising out of the June 5, 2006 battery of Ms. McCracken.  Sometime in early June, Mr. Haney resigned from his employment with WUPD because of the pending felony aggravated battery charge.  In Kansas, an individual convicted of a felony is not eligible for certification as a law enforcement officer.[33]  On November 17, 2006, Mr. Haney was convicted at

---

[31]*Id.* at Plaintiff's Supplemental Fact Nos. 213.

[32]*Id.*

[33]*See* K.S.A. § 74-6505(c); § 74-5616(c).

trial of felony aggravated battery; he has since appealed his conviction.

### F.    The investigation of Captain Bailey.

On or about June 5, 2006, Mr. Haney told Officer Rick Johnson that Captain Schuyler Bailey, who was married at the time, was having an "adulterous" affair with Ms. McCracken. Officer Johnson reported this information to defendant Oliver.  On June 6, 2006, defendant Oliver assigned Associate Director Chris Keary to conduct an internal personnel investigation into the allegations regarding Captain Bailey.  Defendant Oliver also requested that Detective Jim Powers from the University of Kansas Medical Center Police Department conduct the criminal investigation of the allegations against Captain Bailey.   On June 6, 2006 Captain Bailey was placed on administrative leave with pay pending the outcome of the investigation.

Assistant Director Keary completed his internal personnel investigation and concluded that Captain Bailey had engaged in an adulterous affair with Ms. McCracken, and he recommended that the University suspend Captain Bailey for three days without pay.  Defendant Oliver reviewed the investigation, increased the recommended suspension to ten days without pay, and forwarded the information to the University's Department of Human Resources and Equal Opportunity for action. Linda Fund, Assistant Director of Human Resources and Equal Opportunity, reviewed the disciplinary recommendation and determined that a 10-day suspension without pay was appropriate. As a result, Captain Bailey was suspended without pay for the period June 12-23, 2006.

### G.    The instant litigation.

On August 21, 2006 Mr. Haney filed his complaint with the Equal Employment Opportunity Commission (EEOC), alleging race discrimination.  On September 13, 2006, the EEOC issued its determination that it was "unable to conclude that the information obtained establishes a violation

of the statutes," and issued to Mr. Haney a Notice of Rights.  Mr. Haney received the Notice of Rights on November 2, 2006 and commenced the instant action on January 26, 2007.

## III.   Discussion

### A.   Reverse Discrimination Claim

The United States Supreme Court first articulated the well-established burden-shifting analysis for employment discrimination claims in *McDonnell Douglas Corp. v. Green*.[34]  In an ordinary Title VII case, when the plaintiff lacks direct evidence of discrimination but relies on persuasive circumstantial evidence of the same, the plaintiff must carry the initial burden of establishing a *prima facie* case of discrimination.[35]  If the plaintiff successfully does so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."[36]  Finally, the burden then shifts back to the plaintiff to "show that [defendant's] stated reason for [plaintiff's] rejection was in fact pretext."[37]

A *prima facie* case of discrimination may ordinarily be established by showing "that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others . . . ."[38]  "For most plaintiffs, establishing a *prima facie* case is perfunctory, and liability turns on whether the defendant's stated explanation for the adverse employment action

---

[34]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[35]*Id.* at 802.

[36]*Id.*

[37]*Id.* at 804.

[38]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

is pretextual."[39]

"In a reverse discrimination case, however, a *prima facie* case of discrimination requires a stronger showing."[40]  A plaintiff alleging reverse discrimination "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[41] Alternatively, a plaintiff may produce facts "sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred."[42]

The court finds that Mr. Haney has failed to demonstrate a *prima facie* case of discrimination or that the University's stated reason for termination was merely a pretext.

### 1.    Prima Facie Burden

Plaintiff contends he can demonstrate sufficient background circumstances through evidence of racially motivated statements by defendant Oliver and defendant Oliver's actions which indicate that he favors black employees.[43]

### a.    Standard for Background Circumstances

Few courts in our District or the Tenth Circuit have found background circumstances sufficient to demonstrate that the defendant employer was the rare sort of employer who

---

[39]*Id.*

[40]*Id.*

[41]*Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

[42]*Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 590).

[43]Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 57) at p. 57.

discriminated against the majority.  In these few cases plaintiffs met their *prima facie* burden by demonstrating they were the only white employee of the department,[44] presenting statistical data that defendant employed predominately minority employees,[45] providing admissible evidence of  a discriminatory attitude towards the majority through coworker testimony of instances of defendant's preferences towards minority co-workers,[46] or proffering evidence that defendant employer maintained and met policy goals to hire and promote predominately minorities.[47]  The court should also consider whether plaintiff has provided evidence "that [defendants] engaged in a pattern of terminating white employees because of anti-white bias."[48]

### b.    Plaintiff's Evidence of Background Circumstances

Plaintiff bases many of his facts demonstrating defendant Oliver and the University's alleged

---

[44]*Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995); *Jenkins v. State of Oklahoma*, 2005 WL 1503432 W.D. Okla. 2005 (wherein plaintiff was the only white employee in her department at a historically black college).

[45]*Martinez v. Wyoming Dept. of Family Services*, 218 F.3d 1133, 1138 (10th Cir. 2000).

[46]*Kulikowski v. Board of County Com'rs of County of Boulder*, 231 F. Supp. 2d 1053, 1061 (D. Colo. 2002).

[47]*See e.g.*, *Tolle v. American Drug Stores, Inc.*, 2006 WL 325835 (D. Kan. Oct. 11, 2006)(found sufficient background circumstances based on evidence that (1) upper management specifically set goals requiring the promotion of females, (2) the defendant's Chief Operating Officer issued a statement that staffing should mirror the company's 85% female customer base, and (3) the manager responsible for the hiring/promotion decisions had never terminated a female manager, but had terminated eight male managers over a four year period).

[48]*Lyons v. Red Roof Inns, Inc.*, 130 Fed. Appx. 957, 963 (10th Cir. 2005)(found plaintiff had not met this burden and thus had not demonstrated a *prima facie* case); *Mitchell v. City of Wichita*, 140 Fed. Appx. 767, 781-82 (10th Cir 2005)(same).   In the vast majority of Title VII reverse discrimination cases in the Tenth Circuit, courts have found that evidence presented by plaintiffs did not meet the heightened *prima facie* burden.  *See e.g.*, *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006); *Romero v. City and County of Denver Dept. of Social Services*, 57 Fed. Appx. 835, 840 (10th Cir. 2003); *Babbar v. Ebadi*, 216 F.3d 1086, 1086 (10th Cir. 2000); *Cash v. Boeing Co.*, 242 F.3d 387, 387 (10th Cir. 2000); *Johnson v. Potter*, 2004 WL 2823237 (D. Kan. 2004); *Beams v. Norton*, 335 F. Supp. 2d 1135, 1150 (D. Kan. 2004); *Johnson v. Board of Johnson County Com'rs*, 37 F. Supp. 2d 1273, 1281 (D. Kan. 1999); *Wolfenbarger v. Boeing Co.*, 1994 WL 149187 (D. Kan. 1994).

discrimination against the majority on inadmissible hearsay statements; and thus the court must disregard these statements for the purposes of this motion.[49]

However, plaintiff has offered two examples, based on admissible evidence, of defendant Oliver's alleged racism.[50]  First, at the beginning of his tenure as Director, or around 1997-98, defendant Oliver told Carol Supanic, a white female dispatcher, that he was "a black man in a suit in a white man's world."  Second, in the fall of 2005, defendant Oliver told plaintiff "that America never fought–they never–you know, they never fought and helped people in Africa when they needed help down there.  All they care about is Iraqi oil and Europe and World War II, and they don't care about black people."

However, the Tenth Circuit has stated that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions."[51]  Furthermore, "stray racial comments should typically not be admitted unless the plaintiff can link them to personnel decisions or the individuals making those decisions."[52]  Here, plaintiff cannot link either of these comments to the personnel decision to terminate his employment.

_____

[49]Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 57) at p. p. 11-12.  Plaintiff's Statement No. 98 ("that it was [defendant Oliver's] goal to make the KU Public Safety Office one that is run by minority's [sic]") is based on plaintiff's testimony that "I have also heard . . ." Memorandum in Opposition (Doc. 57)(Exhibit B)(Mr. Haney's deposition) at p. 105.  Similarly, Plaintiff's Statement No. 101 ("Director Ralph Oliver had also made racially motivated comments in which Director Oliver stated to the employees that he is always getting stopped by white cops and that cops were just racists") is based on plaintiff's testimony that he "heard from some sergeants that talk up there, how Mr. Oliver says he gets stopped by white cops all the time, and they are racists.") *id.* at (Exhibit B) p. 107. *See also* Statement Nos. 99, 108, 109, 112, 117, 119, 120, and 122.

[50]While defendants argue that these statements amount to inadmissible hearsay, the court finds these statements are likely admissible as admissions of a party opponent, and will view these statements in the light most favorable to plaintiff. *See* Fed. R. Evid. 801(d)(2)(A).

[51]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (citations omitted).

[52]*Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (citations omitted).

Plaintiff's examples of defendant Oliver's favorable treatment of minority officers is equally unavailing. First, plaintiff alleges that upon becoming Director, defendant Oliver promoted two Hispanic officers to sergeants, despite the fact that white officers has also applied for those positions. Second, plaintiff testified that prior to defendant Oliver's tenure as director, KUOPS did not have "any black officers" but within defendant Oliver's first eighteen months as Director, KUOPS hired a black female support staffer, "a couple of white officers", an Hispanic officer and "two black officers."[53] However, plaintiff has offered no evidence that the promoted Hispanic officers were not qualified for the positions, or that the applying white officers were qualified. Indeed, Officer Johnson testified that these promotions "didn't have anything to do with race."[54] So too, the court finds that the hiring of three minority officers, along with a number of white officers, is not the sort of statistical data that indicates a discriminatory attitude towards the majority. Indeed, at no point were the majority, or even close to the majority, of KUOPS' employees non-Caucasian. To that end, at the time of plaintiff's termination, defendant Oliver and Captain Bailey were the only black male employees of the KUOPS and officers Augusto and Anguiano were the only other minority officers.[55]

Plaintiff also argues that during defendant Oliver's tenure as Director more than sixty-five (65) employees have left the organization as a "direct result of the management and management style of Director Ralph Oliver" and his and other administrative officers' "attitude[.]"[56] Similarly,

---

[53]Memorandum in Opposition (Doc. 57)(Exhibit B)(Plaintiff's deposition) at p. 105.

[54]*Id.* at (Exhibit H) p. 52.

[55]*See Argo*, 452 F.3d at 1201 (plaintiff has "not a whit of statistical or even anecdotal evidence that [Caucasians] suffered adverse treatment as a class in the workplace.").

[56]Memorandum in Opposition (Doc. 57) Plaintiff's Supplemental Fact Nos. 88 and 92.

plaintiff argues that he and Captain Witt "did not get along."

However, these sorts of personality conflicts are not germane to the legal issues at hand, as "Title VII only prohibits discrimination on the basis of certain, invidious factors. Employers are free to terminate at-will employees for any other reason–however unfair, unwise, or even erroneous–so long as it is not unlawful."[57]

Taken together in the light most favorable to plaintiff, the evidence falls short of supporting an inference that the defendant is one of the *unusual* employers that discriminates against the majority.

### c. "But for" Mr. Haney's race

Plaintiff has not expressly argued that "but for" his race he would not have been terminated. However, out of an abundance of caution the court finds that plaintiff has failed to put forth sufficient evidence to establish that "but for" his race, the University would not have terminated his employment.

Plaintiff's primary argument is that the University treated him and Captain Bailey differently for allegedly similar infractions. However, his argument and supporting evidence are insufficient to demonstrate that "but for" his status as a white male the defendants would not have terminated his employment. For example, in *Lyons v. Red Roof Inns, Inc.*, the Tenth Circuit disregarded plaintiff's argument that his employer had disciplined him more harshly than a female employee for the same conduct as evidence of "but for" causation because the conduct was not the same: the female employee had accepted a government voucher, while plaintiff had routinely accepted

---

[57]*Adamson v. Multi Community Diversified Servs.*, 514 F.3d 1136, 1153 (10th Cir. 2008)(citing *Neal v. Roche*, 349 F.3d 1246, 1252 (10th Cir. 2003); *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1312 (10th Cir. 1992)).

personal checks, to the financial detriment of the company.[58]

So too, Mr. Haney and Captain Bailey did not engage in the same conduct.  Captain Bailey engaged in an affair with Ms. McCracken and was disciplined for this affair.  However, Mr. Haney was not terminated because of his romantic relationship with Ms. McCracken, but because he coached her to lie during an internal investigation and then lied to investigators about his actions.

### 2.    Pretext

Assuming, *arguendo*, that plaintiff would be able to establish a *prima facie* case of reverse discrimination under Title VII, the court finds no genuine issue of material fact on the issue of pretext.

If the employee establishes a *prima facie* case under Title VII, then "a presumption of discrimination arises" resulting in the burden shifting to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action."[59]

Here, defendants have established a legitimate non-discriminatory reason for plaintiff's termination, namely that plaintiff encouraged a University employee to lie during an internal investigation.[60]

Should the employer produce a legitimate nondiscriminatory reason, "[t]he burden then shifts back to the [employee], who must prove by a preponderance of the evidence that the employer's

---

[58]130 Fed. Appx. 953, 955-56 (10th Cir. 2005).

[59]*Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005).

[60]*See e.g.*, *Knight v. City of Prairie Vill.*, 06-2299-KHV, 2008 U.S. Dist. LEXIS 13217, at *20-21  (D. Kan. Feb. 19, 2008)(citing *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978) for the proposition that an "employer's burden [is] satisfied if it simply explains what it has done.").

reasons are a pretext for unlawful discrimination."[61] An employee can demonstrate pretext "by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[62]  The Tenth Circuit has clarified that "[e]vidence of pretext may include prior treatment of [the employee]; the employer's policy and practice regarding . . . employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating  criteria); and the use of subjective criteria."[63] "One of the established methods of proving pretext is to show that the employer treated the plaintiff  differently from other similarly-situated employees who violated work rules of comparable seriousness."[64]

However, because the court "may not act as a super personnel department that second guesses employers' business judgments[,]"[65] courts in the Tenth Circuit "proceed[] with caution considering the relative merits of individual employees[.]"[66]  "In making a pretext determination, a court looks at the facts as they appeared to the person making the employment decision, because it is the employer's 'perception that is relevant, not the [employee's] subjective evaluation of his

---

[61]*Jaramillo*, 427 F.3d at 1307.

[62]*Id.* at 1308.

[63]*Id.*

[64]*Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001) (citing *English v. Colorado Dept. of Corrs.*, 248 F.3d 1002, 1011 (10th Cir. 2001)).

[65]*Jaramillo*, 427 F.3d at 1308.

[66]*Id.* at 1308.

own relative performance.'"[67]

### a.     Inconsistent policies

Plaintiff states there are three ways by which he can demonstrate pretext.[68]  First, plaintiff asserts that "several written policies were violated during the course of the Internal Affairs investigation of Mr. Haney" and as a result defendants "acted contrary to a written policy prescribing the action to be taken by the defendant under the circumstances."[69]  Plaintiff argues that based upon his own experience, before an internal investigation against an officer can commence at KUOPS "it must be apparent that an actual violation of the law has occurred" and that his actions did not amount to "Computer Trespass" under K.S.A. § 21-3755, for which KUOPS was investigating.[70]

However, the University's policy allows an investigation to proceed if there is a complaint "which indicates, *or seems to indicate*, that an employee . . . has committed a violation of law."[71]  Under K.S.A. § 21-3755 "[c]omputer trespass is intentionally, and without authorization accessing or attempting to access any computer, computer system, computer network or computer software, program, documentation, data or property contained in any computer, computer system or computer network."  It is undisputed that Ms. McCracken's supervisor had informed KUOPS that plaintiff had

---

[67]*Vigil v. City of Albuquerque*, 210 Fed. Appx. 758, 764 (10th Cir. 2006)(citing *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177-78 (10th Cir. 2000) (quoting *Furr v. Seagate Tech, Inc*., 82 F.3d 980, 988 (10th Cir. 1996))).

[68]Memorandum in Opposition (Doc. 57) at p. 58-59.

[69]*Id.* at p. 58 (citing *Kendrick v. Penske Transp. Services Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000)).

[70]*Id.*

[71]*Id.* at 30 (Plaintiff's Uncontroverted Statement of Fact No. 161)(emphasis added).

access to and use of Ms. McCracken's University password.  With such knowledge, KUOPS followed its own procedure as the facts they had *seemed to* indicate plaintiff committed a violation of the law.  That plaintiff was never ultimately charged with a crime is not material.

Plaintiff also alleges that he was denied KAPE Union representation and the opportunity to call a witness on his behalf during an investigation interview, in violation of KU policy,[72] but can point to no policy regarding Union representation in these sorts of matters. Any other alleged inconsistencies are immaterial or have not been supported by the record.[73]

### b.    Similarly situated employees

Second, plaintiff argues that he has provided "evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness"[74] because "Captain Bailey, a black employee, was likewise found to have committed a criminal act" yet, "was only suspended without pay for 10 days, whereas Mr. Haney was discharged[.]"[75]

However, unless plaintiff and Captain Bailey "are subject to the same responsibilities, expectations, and discipline, the comparison to the disciplinary action taken against [them] does not support an inference that race is the reason for the disparity in treatment."[76]  To this end, plaintiff

---

[72]*Id.* at 31.

[73]Plaintiff makes much of the fact that he believes that both his internal investigation and criminal investigation interviews were tape-recorded, while defendants only produced one of these tapes. Defendants, in turn, argue that only one tape exists.  However, the issue is not material as plaintiff does not argue that either of the investigators, both white males, questioned him in any manner which would indicate plaintiff's race was the basis for the investigation.  Rather plaintiff argues that they asked him inappropriate personal questions regarding his relationship with Ms. McCracken.  *See e.g.*, Memorandum in Opposition (Doc. 57) at p. 31-32.

[74]*Kendrick*, 220 F. 3d at 1230.

[75]Memorandum in Opposition (Doc. 57) at p. 58

[76]*Mitchell v. City of Wichita*, 140 Fed. Appx. 767, 780 (10th Cir. 2005).

has not provided any evidence that he, as an Officer at KUOPS, and Captain Bailey, a supervisor at KUOPS, had similar responsibilities, expectations and accountability.  As a result, this court will follow the general presumption in the Tenth Circuit that "employees may not be 'similarly situated' when one is a supervisor and the other is not."[77]

Even assuming, *arguendo*, that plaintiff and Captain Bailey were similarly situated, they did not "violate[] work rules of comparable seriousness."[78]  While the court need not and should not determine what discipline would have been appropriate for Captain Bailey's actions,[79] and understanding that Captain Bailey and plaintiff need not have committed "identical violations of identical work rules",[80] the court takes seriously the Tenth Circuit's caution that an employer "must be allowed to exercise its judgment in determining how severely it will discipline an employee for different *types* of conduct."[81]  While Captain Bailey engaged in a consensual sexual affair with a fellow employee at the University, it is undisputed that plaintiff sought to convince a University employee to lie during the course of an internal investigation.  As a police officer, documented proof of plaintiff's lack of veracity could call into question his ability to perform his job duties such as testifying under oath in criminal proceedings, in the way that Captain Bailey's personal and consensual relationship with Ms. McCracken would not.[82]

---

[77]*Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001).

[78]*Id.* (citing *English v. Colorado Dept. of Corrs.*, 248 F.3d 1002, 1011 (10th Cir. 2001)).

[79]*See Selenke v. Medical Imaging of Colo.*, 248 F. 3d 1249, 1261 (10th Cir. 2001)(finding that the court may not second-guess an employer's business judgment).

[80]*Kendrick*, 220 F.3d at 1233.

[81]*Id.* (emphasis added).

[82]*See e.g.*, *id.* at (Exhibit G)(Riner Depo.) p. 48.  Detective Riner testified that "as a police officer your credibility is the most important thing you have.  And if you lose that credibility, you need to go do

### c.      Defendants' explanation was false

Third, Mr. Haney contends that "defendants' explanation for discharging Mr. Haney was false in several respects" such that "a reasonable jury could choose to disbelieve Ms. Vannaman's explanation that 'the facts showed that Mr. Haney had coached and/or convinced another employee to lie so that he and she could communicate the same story to their employer, the University.'"[83]

However, plaintiff does not dispute the fact that he left the voicemails for Ms. McCracken in which plaintiff states he is trying to get their stories straight.[84] That plaintiff did so because "he didn't want Ms. McCracken in any trouble since this was her first job in 7 years and she had a small child",[85] is an asserted justification, not a denial, of his actions.

Furthermore, plaintiff does not dispute that Ms. Vannaman, a white female, did not base her decision to terminate plaintiff's employment on race.[86] "A challenge of pretext, however, requires the court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee."[87]  "'The relevant inquiry is not whether [the decision-maker's] proffered

---

something [else] because you can't be a police officer.  If it's on tape that you're saying that you're going to lie if asked, my opinion is, your–your credibility is done."

[83]*Id.* at 58-59.

[84]*Knight v. City of Prairie Vill.*, 06-2299-KHV, 2008 U.S. Dist. LEXIS 13217, at *20-21  (D. Kan. Feb. 19, 2008)(where there was evidence that plaintiff committed the alleged misconduct and provided no further evidence that the reason for plaintiff's termination was merely pretext, plaintiff failed to meet his burden).

[85]*See* Memorandum in Opposition (Doc. 57) Plaintiff's Supplemental Fact No. 168.

[86]Plaintiff also never argues that any of the white employees of KUOPS who investigated his actions, and recommended his termination, did so because of his race.

[87]*Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007)(citing *Green v. New Mexico*, 420 F.3d 1189, 1191 n.2 (10th Cir. 2005); *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1231(10th Cir. 2000))(internal citations omitted).

reasons were wise, fair or correct,' but rather we ask whether they believed those reasons to be true and 'acted in good faith upon those beliefs.'"[88] While the Tenth Circuit has acknowledged that "a defendant may be held liable if the manager who discharged the plaintiff merely acted as a rubber stamp . . . for a subordinate employee's prejudice",[89] the court has clarified this to mean that plaintiff must prove that "the biased subordinate's discriminatory reports, recommendation, or other actions *caused* the adverse employment action."[90] Even assuming defendant Oliver had a "racial bias", because Ms. Vannaman asked plaintiff "for his version of events" and conducted her own investigation of the allegations against plaintiff,[91] there is no inference that Ms. Vannaman merely rubber-stamped defendant Oliver's recommendation.

Simply put, it is undisputed that plaintiff encouraged a witness in an internal investigation to misrepresent the truth, and there is no evidence that this reason for terminating plaintiff was merely a cover to discriminate against him due to his race.

**B.** **Plaintiff's Retaliation Claim.**

Count II of plaintiff's Complaint alleges a Title VII retaliation claim, specifically that he was retaliated against for opposing unlawful employment practices, and for participating in proceedings under Title VII.[92] Plaintiff alleges that the University retaliated against him when it "terminated plaintiff, banned him from University property, published his picture on campus, and attempted to

---

[88]*Id.* (citing *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)).

[89]*Kendrick v. Penske Transp. Services Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

[90]*EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 487 (10th Cir. 2006)(citations omitted)(emphasis added).

[91]*Id.*

[92]*See* Complaint (Doc. 1) at ¶ 41.

interfere with his current and future employment opportunities."[93]

However, in response to the instant motion, plaintiff does not address his retaliation claim and/or his exhaustion, or lack there of, of said claim.  However, for caution's sake, the court will address both whether plaintiff failed to exhaust this claim and whether it fails on substantiative grounds.

### 1.     Exhaustion

Defendants argue, and the court agrees, that plaintiff has failed to exhaust his retaliation charge.  As a general rule, a plaintiff must exhaust his administrative remedies before pursuing a Title VII claim in federal court.[94]  As a result, "a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."[95]  Indeed, "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[96] The exhaustion requirement exists "to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims."[97]

In Mr. Haney's case, it is undisputed that Mr. Haney's EEOC charge makes no reference to

---

[93]*Id.* at ¶ 42.

[94]*Simms v. Oklahoma ex. rel., Dep't of Mental Health and Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999).

[95]*Id.*

[96]*Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. V. Morgan,* 536 U.S. 101, 110-13 (2002)).

[97]*Foster v. Ruhrpumpen, Inc.,* 365 F.3d 1191, 1195 (10th Cir. 2004).

a claim of retaliation.[98]   Mr. Haney only checked the "Race" box in the section entitled "discrimination based on", leaving the "retaliation" box unchecked.   "The failure to mark a particular box [in an EEOC charge] creates a presumption that the charging party is not asserting claims represented by the box."[99]   This presumption maybe be rebutted, if the "text of the charge clearly sets forth the basis of the claim."[100]

A review of plaintiff's EEOC charge demonstrates that plaintiff cannot rebut this presumption.   The narrative portion of plaintiff's EEOC complaint focuses on the University's alleged inequitable discipline of Captain Bailey and Mr. Haney, and neither mentions nor implies any "retaliation" on the party of the University or defendant Oliver.[101]   While plaintiff's Complaint in the instant case states the University and defendant Oliver  "retaliated against [him] for opposing unlawful employment practices, and for participating in proceedings under Title VII"[102] and by "terminat[ing] plaintiff, bann[ing] him from University property, publish[ing] his picture on campus, and attempt[ing] to interfere with his current and future employment opportunities"[103], plaintiff's EEOC charge is devoid of any mention of these, or similar, facts.   As a result, plaintiff has waived this claim.

## 2.    Evidence of retaliation

---

[98]Motion for Summary Judgment (Doc. 46) at (Exhibit 12).

[99]*Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)(citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998)).

[100]*Id.* (citing *Gunnell*, 152 F.3d 1260).

[101]Motion for Summary Judgment (Doc. 46) at (Exhibit 12).

[102]*See* Complaint (Doc. 1) at ¶ 41.

[103]*Id.* at ¶ 42.

The *McDonnell Douglas* burden shifting framework also applies to a claim of retaliation. To establish a *prima facie* claim under Title VII for retaliation, a plaintiff must establish three elements: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[104]

As to retaliation Title VII makes it an unlawful for an employer "to discriminate against any of its employees . . . because he has opposed any practice *made an unlawful employment practice by this subchapter,* or because he has . . . participated in any manner in an investigation, proceeding, or hearing *under this subchapter.*"[105]

Since plaintiff has not responded to defendants' Motion for Summary Judgment as to his claim of retaliation under Title VII, the court will simply note that plaintiff has not provided the court with evidence of any activities he engaged in which were protected from discrimination.  In his deposition plaintiff only identified the manner in which Captain Witt questioned him during the course of the internal affairs investigation as the unlawful employment practices he opposed.[106] Specifically, plaintiff stated  Mark Witt treated him unfairly because "Mark Witt doesn't like me. He has never liked me."  However, plaintiff never articulated how or why this treatment of him by Captain Witt violated Title VII.[107]

The only participation in a protected activity Mr. Haney identified was the EEOC charge he

---

[104]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219, 1226 (10th Cir. 2006).

[105]42 U.S.C. § 2000e-3(a) (emphasis added).

[106]*See* Motion for Summary Judgment (Doc. 46) at (Exhibit E)(Plaintiff's Depo.) p. 127-28, 131.

[107]*See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998) (because Title VII is not a civility code, common workday tribulations are not actionable).

filed on August 21, 2006.[108]  However, plaintiff filed his EEOC charge, devoid of any claim of unlawful retaliation, more than seven (7) months *subsequent* to his termination of employment with the University of Kansas and two (2) months *after* he resigned his position with Washburn.  By definition, retaliation presumes the protected activity occurred *before* the alleged wrongful acts.[109] Therefore, as a matter of law, Mr. Haney has not shown he had *previously* opposed conduct made unlawful under Title VII, and he cannot prevail on this retaliation claim.

### C.       Liberty Interest Claim

Mr. Haney's §1983 Liberty Interest claims are contained in Counts III and IV of his complaint. Count III of the Complaint is against the University for monetary damages and for injunctive relief against defendant Ralph Oliver in his official capacity. Count IV named defendant Oliver in his individual capacity and seeks injunctive and monetary relief.

The undisputed material facts, as discussed below, demonstrate that Mr. Haney waived his right to seek this claim and that he cannot establish all of the elements necessary to state a liberty interest claim.

### 1.       Standard

To prevail on a § 1983 claim, a plaintiff must establish that the defendants acted under color

---

[108]*See* Motion for Summary Judgment (Doc. 46) at (Exhibit E)(Plaintiff's Depo.) p. 132-34.

[109]*See Williams v. W.D. Sports*, 497 F.3d 1079, 1091 (10th Cir. 2007)("[A] causal connection is established where the plaintiff present evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely *followed* by adverse action.")(citation omitted)(emphasis added).  *See also* 45A Am Jur 2d *Job Discrimination* § 247 (2008)("A lack of causation [as to retaliation under Title VII] may be shown where the adverse action occurred *before* the claimant began to assert his rights[.]")(emphasis added); *Webster's New Collegiate Dictionary* 957 (1979) (defining "retaliate" as "*paying back* of an injury in exact measure and kind by way of revenge.")(emphasis added).

of state law and deprived the plaintiff of some federal right.[110]  The Tenth Circuit applies a four-part

test to demonstrate deprivation of a liberty interest in one's good name and reputation:

> First to be actionable, the statements must impugn the good name, reputation, honor or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.[111]

If all of the above elements are established, then the due process clause requires an adequate

name-clearing hearing.[112]

Plaintiff indicates there are two statements at issue in this case.  First, the statements

regarding plaintiff being dismissed from employment for coaching a witness to lie in the course of

an investigation and plaintiff himself lying; and, second, the statements relating to plaintiff's ban

from campus for threatening to shoot Captain Witt, Sabrina Marino and Ms. McCracken.

### 2.      Notice and Opportunity to Respond

At the outset the court notes that defendants complied with the fundamental requirements

of due process.  Plaintiff received notice as to the basis of the University's initial investigation and

participated in a pre-termination hearing with Ms. Vannaman wherein plaintiff, with the assistance

of counsel, told his side of the story.  These actions complied with "'[t]he essential requirements of

due process' which the Supreme Court has described as 'notice and an opportunity to respond.  The

opportunity to present reasons, either in person or writing, why proposed action should not be taken

---

[110]*Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999).

[111]*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 526 (10th Cir. 1998).  "Since *Workman*, subsequent authority from the Tenth Circuit suggests that the correct terminology [as to the third prong] is 'and.'" *Lassiter v. Topeka Unified Schl Dist. No. 501*, 347 F. Supp. 2d 1033, 1046 n. 9 (D. Kan. 2004)(citing *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 728 n.1 (10th Cir. 2000)).

[112]*Id.*

is a fundamental due process requirement.'"[113]

Here, plaintiff received notice of the investigation and the results of the investigation and had an opportunity to respond and explain why the University should not terminate his employment. The University met the "fundamental requirement of due process" by affording plaintiff "the opportunity to be heard at a meaningful time and in a meaningful manner."[114] As a result, the court finds that the procedures available to plaintiff complied with the essential requirements of due process.

### 3.     Waiver

Defendants argue that plaintiff waived his right to appeal his dismissal from employment by withdrawing his appeal prior to hearing, thus waiving his right to claim a liberty interest violation. As to this issue plaintiff testified as follows:

> Q:     And as a public safety officer, you were what is known as a university support staff employee here at the university.  The university, as part of its policies and procedures, has a disciplinary action hearing process to which employees in your class, the USS class, can appeal and review of any disciplinary action taken by the university, correct?
> A.     Correct.
> Q:     And then you subsequently withdrew your appeal?
> A:     Correct.
> Q:     So you abandoned your request to have the disciplinary action reviewed by the internal administration process that was available to you at the university.
> A:     I did that for a certain reason, yes.
> Q:     Correct.  I understand you did it for a certain reason, but you would agree with me that--
> A:     Yes.
> Q:     --request to appeal, withdrew that request and abandoned your right to have the disciplinary action reviewed by the administrative process available to you here at the university, correct?

---

[113] *Ward v. Anderson*, 494 F.3d 929, 366 n. 9 (10th Cir. 2007)(citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

[114] *United States v. Jones*, 160 F.3d 641, 645 (10th Cir. 1998).

A:        Correct.[115]

The Tenth Circuit has stated "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."[116]  So too, "[b]y knowingly failing to take advantage of the post-termination procedures available to [a plaintiff], [said plaintiff] has waived his right to challenge them in [a federal] action."[117]

In *McGee v. Boren*, the Tenth Circuit considered a case similar to Mr. Haney's.[118]  In *McGee*, the Tenth Circuit affirmed the district court's decision that plaintiff, a tenured faculty member at the University of Oklahoma, had waived his right to assert a due process claim by failing to attend a formal hearing scheduled before the Faculty Appeals Board.  Plaintiff McGee chose not to attend the hearing and the University then abrogated his tenure, citing his failure to attend the hearing.  The *McGee* court noted that "Federal courts do not sit to second guess state decisions on the merits of a discharge decision, but only to ensure that employees are provided due process when the decision is made . . . .  Unless state law fails to afford [Dr. McGee] adequate process, he has no federal constitutional claim to begin with."[119]  The court concluded that "[b]y failing to attend the hearing,

---

[115]Motion for Summary Judgment (Doc. 46) at (Exhibit E)(Plaintiff's Depo.) p. 61-62.

[116]*McGee v. Boren*, 58 Fed. Appx. 436, 438 (10th Cir. 2003)(citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[117]*Copple v. City of Concordia*, 814 F. Supp. 1529, 1539 (D. Kan. 1993).

[118]58 Fed. Appx. 436, 438 (10th Cir. 2003).

[119]*Id.* (citing *Pitts v. Bd. of Educ.*, 869 F.2d 555, 557; *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) (holding plaintiff's failure to avail self of post-deprivation hearings resulted in waiver of due process claim)).  *See also Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004) ("[Plaintiff] waived any argument that she was denied due process by failing to request the hearing to which she now claims she was entitled.").

Dr. McGee 'gave up his right to test the correctness of the [University's] decision[]'"[120] and concluded that the "waiver analysis applies equally to his challenges to the pre-termination process, and to his liberty interest . . . claims."[121]

Here, plaintiff chose not to avail himself to his post-termination right and thus waived his right to bring a claim in federal court for violation of his liberty interest claims.

### 4.    Defendant Oliver's statements to Mr. Forester

Since the case law is unclear as to whether the Tenth Circuit has stated the third prong of a deprivation of a liberty interest in one's good name and reputation in the conjunctive, "and," or the disjunctive, "or," out of an abundance of caution the court will address whether defendant Oliver's statements to Mr. Forester, Chief of Washburn University Police, were "in the course of terminating" plaintiff *and/or* whether this statement foreclosed plaintiff's other employment opportunities.  As to both, the court finds plaintiff has not met his burden.

First, since the University terminated plaintiff's employment in mid-January of 2006 and defendant Oliver did not speak with Mr. Forester until May 26, 2006, the court finds these comments were not raised during the *course* of plaintiff's termination from employment.  These statements, made more than four months after plaintiff's termination, were not "incident to the termination"[122] and both the nature and timing[123] of the statements do not suggest otherwise.

Second, plaintiff admits that Chief Forester took no employment action against him as a

---

[120]*Id.* (citing *Pitts*, 869 at 557).

[121] *Id.*

[122]*Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000).

[123]*Id.* ("[A[ court must examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination.").

result of the information defendant Oliver provided to him.[124]  Mr. Haney admits that he resigned

his employment with Washburn was because of the battery incident between him and Ms.

McCracken[125] and not because of defendant Oliver's statements.  Plaintiff must show that his

employment opportunities were foreclosed "not merely made difficult to obtain because of damage

done to the plaintiff's reputation. . . ."[126]  Indeed, the Tenth Circuit has held that "the loss of

prospective job opportunities is too speculative to support a deprivation of a liberty interest claim

under § 1983."[127]  In light of this evidence, Mr. Haney cannot demonstrate that any alleged

statements made by defendants foreclosed his employment opportunities at Washburn or elsewhere.

As a result, defendants are entitled to this prevail on this claim as to defendant Oliver's statement

as a matter of law.

## IV.     Motion to Dismiss for Lack of Jurisdiction (Doc. 47)

In light of plaintiff's waiver of and inability to prove an element of his section 1983

deprivation of liberty interest claim, the court need not address defendants' other arguments

challenging plaintiff's liberty interest claim, including defendant's Motion to Dismiss (Doc. 47)

plaintiff's Liberty Interest Claim.

## V.      State-law claims

Because the court has granted summary judgment to defendants on the federal claims, the

---

[124]Motion for Summary Judgment (Doc. 46) at (Exhibit E)(Plaintiff's Depo.) p.149, 151.

[125]*Id.* at (Exhibit E) p. 149-150, 194.

[126]*Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004).

[127]*McCarty v. City of Bartlesville*, 8 Fed. Appx. 867, 875 (10th Cir. 2001) (citing *Phelps v. Wichita Eagle-Beacon,* 886 F.2d 1262, 1269 (10th Cir. 1989) ("Damage to 'prospective employment opportunities' is too intangible to constitute a deprivation of a liberty or property interest."); *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1559 (10th Cir. 1993) (same)).

court can, and will, decline to exercise supplemental jurisdiction over plaintiff's remaining state-law claims for tortious interference with contract and defamation.[128]

The choice to exercise supplemental jurisdiction rests within the court's sound discretion.[129] "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'"[130] "Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice."[131] Generally, upholding the notions of federalism and comity "demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[132]

Finding no compelling reason to refrain from dismissing the state-law claims without prejudice, the court declines to exercise supplemental jurisdiction in this case.[133] Plaintiff is free to pursue his state-law claims in a Kansas court because even if the statute of limitations would otherwise have run, 28 U.S.C. § 1367(d) tolls the statute of limitations during the time the claim is pending and affords plaintiff at least 30 days from a current federal court dismissal to commence

---

[128]*See* 28 U.S.C. § 1367(c)(3).

[129]*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[130]*City of Chicago*, 522 U.S. at 173.

[131]*Ney v. City of Hoisington*, 508 F. Supp. 2d 877, 895 (D. Kan. 2007)(citing *Ball v. Renner*, 54 F. 3d 664, 669 (10th Cir. 1995)(collecting cases); *Roe v. Cheyenne Mountain Conference Resort*, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997)).

[132]*Id.* (citing *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

[133]*Id.*

a new action in the state court.[134]

Accordingly,

IT IS THEREFORE ORDERED that defendants' Motion for Summary Judgment (Doc. 46) is granted as to all federal claims.  Because the court declines to exercise supplemental jurisdiction in this case, plaintiff's state law claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Motion to Dismiss for Lack of Jurisdiction (Doc. 47) is denied as moot.

IT IS SO ORDERED.

Dated this 31st day of July, 2008, at Topeka, Kansas.

  s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[134]*Id.* at n. 88 (citing 28 U.S.C. § 1367(d); *Jinks v. Richland County, S.C.*, 538 U.S. 456, 466-67 (2003) ("no constitutional doubt arises from holding that [a] claim against . . . a political subdivision of a State–falls under the definition of 'any claim asserted under subsection (a)'").  "Kansas's 'saving statute,' K.S.A. § 60-518, affords a plaintiff six months to commence a new action if a previous timely action failed otherwise than upon the merits.  Examples of such failures include dismissal without prejudice." *Id.* at n. 88 (citing *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 245 Kan. 290, 777 P.2d 836, 839 (Kan. 1989)).  "If applicable, this time frame controls over the 30-day tolling period in 28 U.S.C. § 1367(d)." *Id.* at n. 88.